

Steven C. Smith, State Bar No. 116246
Derrick C. Hughes, State Bar No. 257560
Jason K. Smith, State Bar No. 277923
**SMITH CAMPBELL CLIFFORD KEARNEY GORE**
1800 North Broadway, Suite 200
Santa Ana, California 92706
Telephone:    (714) 550-7720
Facsimile:    (714) 550-1251
Email:        ssmith@scckg.com
Email:        dhughes@scckg.com
Email:        jsmith@scckg.com

Jennifer A. Trusso, State Bar No. 198579
**SHEPPARD MULLIN RICHTER & HAMPTON LLP**
650 Town Center Drive, Fourth Floor
Costa Mesa, California 92626
Telephone: 714.513.5100
Facsimile: 714.513.5130
Email: jtrusso@sheppardmullin.com

Attorneys for Plaintiff/Counterdefendants:
BioCell Technology, LLC, GMP Laboratories, Inc.
Intellipi, LLC, Mohammad Ishaq and Suhail Ishaq

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT - SOUTHERN DIVISION

|  |  |
|---|---|
| BIOCELL TECHNOLOGY, LLC, a California limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> ARTHRO-7, INC., a California corporation; *et al.*, <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIM | CASE NO: 8:12-cv-00516-JVS-RNB <br><br> Complaint Filed:  April 4, 2012 <br> Trial Date:        June 4, 2013 <br><br> JUDGE James V. Selna <br> DEPT. 10C <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT** <br><br> **FILED UNDER SEAL** <br><br> **Hearing Date:   April 15, 2013** <br> **Hearing Time:   1:30 p.m.** <br> **Hearing Place:  Dept. 10C** |

Smith | Campbell | Clifford | Kearney | Gore

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................... 1

II. STATEMENT OF RELEVANT FACTS ................................................ 2

   A. Biocell's Patents ........................................................................... 2

   B. Defendants and the Accused Products ......................................... 2

   C. Evidence of Patent Infringement and/or False Advertising ......... 4

      1. Evidence of Infringement .................................................... 4

      2. Co-Existence of Infringement and False Advertising .......... 6

   D. Defendants Failure to Produce Documents .................................. 6

III. ARGUMENT ......................................................................................... 8

   A. Legal Standard .............................................................................. 8

   B. BioCell's Technical Expert Reported Infringement, Plaintiffs
      Admitted Infringement, and Tests on the Accused Product
      Support Infringement. ................................................................... 9

      1. Defendants admitted the Accused Products Contain
         Collagen II. ........................................................................ 9

      2. Defendants have admitted the Accused Products contain
         collagen derived from chicken sternum. ........................... 10

      3. BioCell can establish the molecular weight of the collagen
         in the Accused Products has changed over time. ............... 11

      4. AR8 contains 10% hyaluronic acid and pre-litigation tests
         show that AR7 contained over 10% hyaluronic acid. ........ 12

Smith | Campbell | Clifford | Kearney | Gore

i

C.    Defendants Failed to Produce Documents Which Would Indicate that it Manufactured the Collagen in the Accused Products or Had it Made to Specification. .............................................................. 12

D.    The Accused Products are Sold with Instructions to be Taken Orally. .......................................................................... 13

E.    There is a Triable Issue as to Whether Defendants are Liable for Induced Infringement. ............................................................ 14

IV.    CONCLUSION ...................................................................... 16

Smith | Campbell | Clifford | Kearney | Gore

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................. 8

*Crowell v. Baker Oil Tools, Inc.*, 143 F.2d 1003 (9th Cir. 1944) ............................ 13

*Faraoudja Labs, Inc. v. Dwin Elecs., Inc.*, 1999 U.S. Dist. LEXIS 22987
   (N.D. Cal. 1999)........................................................................................ 12

*First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253 (1968).............. 8

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ......... 8

*Meyer v. Intellectual Props. v. Bodum, Inc.*, 690 F.3d 1354 (Fed. Cir. 2012).......... 15

*Wilkerson v. McCarthy*, 336 U.S. 53 (1949) ............................................................. 8

**Statutes**

Fed. R. Civ. P. 56(c) ................................................................................................... 8

Smith | Campbell | Clifford | Kearney | Gore

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

# MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs BioCell Technology, LLC and Intellipi, LLC (collectively, "BioCell") hereby submit their opposition to Defendants' motion for summary judgment of non-infringement.

## I. INTRODUCTION

Defendants motion for summary judgment for non-infringement should be denied in its entirety for three primary reasons:  (1) Defendants motion should be denied under Rule 56(d) because they have failed to produce documents crucial to BioCell's infringement analysis and should not be rewarded for their misconduct; (2) Defendants own admissions and advertising support infringement as well as pre-litigation testing on the accused products; and, (3) Dr. Shri Thanedar, Ph.D.'s report as well as post-litigation testing supports infringement.

Defendants are correct to point out that Plaintiffs are pursing claims for both patent infringement and false advertising.  Defendants fail to mention that evidence supports both claims.

Documents and expert testimony show Defendants are falsely advertising and falsely labeling that the accused products contain collagen type II from chicken sternum when they are actually selling collagen type I from chicken skin—thus supporting false advertising.  The person most qualified for the corporate defendants testified during her deposition that the accused products contain collagen type II from chicken sternum—thus supporting patent infringement.

There is a triable issue of fact about whether Dr. Thanedar's opinion leads a jury to find false advertising or whether Defendants' admissions lead a jury to find patent infringement.

Additionally, the claims for false advertising and patent infringement are not necessarily exclusive.  Defendants produced certificates of analysis from their collagen suppliers which indicate that in 2007 to 2008 the collagen was derived from sternum (meaning it is collagen II) and other certificates of analysis from 2009

1

Smith | Campbell | Clifford | Kearney | Gore

indicate the collagen was derived from chicken skin (meaning its collagen I). BioCell also conducted pre-litigation tests on the accused products in 2010 which indicate they contained collagen II, but the post-litigation tests on samples produced by Defendants from February 2011 indicate that the accused products contained collagen I.

## II.   STATEMENT OF RELEVANT FACTS

### A.   Biocell's Patents

BioCell is the owner and/or exclusive licensee of U.S. Patent No. 6,025,327 ("the '327 patent"), U.S. Patent No. 6,323,319 ("the '319 patent"), U.S. Patent No. 6,780,841 ("the '841 patent"), U.S. Patent No. 7,091,180, and U.S. Patent No. 7,799,348 (collectively, "patents-in-suit"). Generally, these patents claim, among other things, the composition, the method of using, and the method of manufacturing hydrolyzed collagen II derived from chicken sternum.

The heart of the patents-in-suit is chicken sternal collagen II which is reduced down to a specific molecular weight range so that it can be more effectively absorbed by the body when taken as a dietary supplement for joint health.

The molecular weight range claimed by the '327 and the '319 patent is 1,500 Daltons to 2,500 Daltons. Plaintiffs' Statement of Disputed Facts ("SDF") No. 28. The molecular weight range claimed by the '841 patent is 5,500 Daltons to 10,000 Daltons. *Id.*, No. 29. The molecular weight range claimed by the '180 and the '348 patents is 50 Daltons to 10,000 Daltons. *Id.*, No. 30.

The '841, the '180, and the '348 patents also require that the composition have at least 10% Hyaluronic Acid and/or 20% Chondroitin Sulfate. *Id.*, No. 31.

### B.   Defendants and the Accused Products

Defendant Robinson Pharma, Inc. ("Robinson") manufactures the Arthro-7 product ("AR7") and the Arthro-8 product ("AR8") (collectively, "the Accused Products"). *Id.*, No. 1.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

The Accused Products are nutritional products containing a blend of ingredients, including collagen. *Id.*, No. 32.

Robinson blends the underlying ingredients together. *Id.*, No. 33. Robinson then encapsulates the underlying ingredients. *Id.*, No. 34. Robinson then puts the capsules in bottles. *Id.*, No. 35. The Accused Products are sold by Robinson to Arthro-7, Inc., Gero Vita, Inc., Nutrivita Laboratories, Inc., and VitaStrong, Inc. (collectively, "Retail Defendants") who, in turn, sell the products to customers. *Id.*, No. 36. Tuong Nguyen is the CEO of Robinson. *Id.*, No. 37. Tuong Nguyen is also an officer of all of the Retail Defendants. *Id.*, No. 38.

AR7's primary ingredient is identified as "AR7 Joint Complex." *Id.*, No. 39. The AR7 Joint Complex consists of the following ingredients: "***Collagen II*** (from chicken), Cetyl Myristoleate (CMO), Lipase (30 USP units), Methylsulfonylmethane (MSM), Turmeric (*Curcuma longa* extract, root, 95% curcurmin), Bromelain (from pineapple, 2400 GDU)." (Emphasis added). *Id.*, No. 40. The collagen II within the AR7 product is derived from chicken sternum. *Id.*, No. 41. Since this litigation was initiated, the label for AR7 has changed and the first ingredient is now listed as "Collagen" without identifying which type of collagen. *Id.*, No. 42.

AR8 contains the same ingredients as AR7 with the addition of Hyaluronic Acid. *Id.*, No. 43. The AR8 label indicates that is contains 10% Hyaluronic Acid. *Id.*, No. 44.

The Accused Products are sold as products that "promote[] overall joint health," "nourish[] joints and cartilage," and "promote[] mobility. *Id.*, No. 45. The Accused Products claim to be "[c]linically proven to promote joint comfort." *Id.*, No. 46.

Defendants advertise that the Accused Products are "clinically proven to support joint comfort." *Id.*, No. 47. AR7 was subjected to a three-month clinical study for its effects on arthralgia for patients with osteoarthritis. This study was

1   published in the Nutritional Journal in 2008. *Id.*, No. 48. This study is distributed

2   to customers and used as a marketing tool by Defendants. *Id.*, No. 49. This study

3   indicates that "[t]he main ingredients of AR7 included sternum collagen. . ." In this

4   study, [t]he *patients* in the *treatment group* were given AR7 Joint Complex orally, 1

5   capsule daily for 12 weeks. . ." (Emphasis added). *Id.*, No. 50.

6   In an advertisement for AR7, Defendants state that "[t]ype II collagen is a

7   pretty amazing material. It has certain innate properties that can *heal* wounds. It's

8   been shown in many studies to fortify unhealthy joints, improve mobility, and

9   support overall joint health." (Emphasis added). *Id.*, No. 51.

10   The recommended dose for the Accused Products "is two (2) capsules twice a

11   day for the first four weeks, preferable before any two meals. . ." *Id.*, No. 52. The

12   Accused Products are in the form of hard capsules which contain at least 655

13   milligrams of ingredients.. *Id.*, No. 53.

14   Defendants' websites have customer testimonials about the alleged success of

15   the Accused Products as a dietary supplement. *Id.*, No. 54. Defendant Hahn uses

16   the AR7 product. *Id.*, No. 55.

17   **C.   Evidence of Patent Infringement and/or False Advertising**

18   **1.   Evidence of Infringement**

19   Defendants testified that the collagen within the AR7 product is collagen II

20   derived from chicken sternum. *Id.*, No. 41.

21   On or about June 1, 2010, BioCell obtained samples of AR7 and sent them (i)

22   to V-labs, Inc. for molecular weight analysis, and (ii) to Atlas Bioscience, Inc. to

23   determine the amount of Hyaluronic Acid and Chondroitin Sulfate contained in

24   AR7. *Id.*, No. 56.

25   On or about July 29, 2010, V-labs, Inc. prepared a report based on its testing

26   of the AR7. *Id.*, No. 57. The July 29, 2010 report from V-Labs, Inc. indicates the

27   

28   I                                *Id.*, No. 58. The molecular weight requirement of the

Smith | Campbell | Clifford | Kearney | Gore

4

Smith | Campbell | Clifford | Kearney | Gore

1   '327 and '319 patents is 1,500 to 2,500 Daltons. *Id.*, No. 28.

2       Defendants produced in this litigation a sample of the collagen (Lot #

3   11101286) allegedly used in the Accused Products. *Id.*, No. 59.  This sample of

4   collagen was from a single lot out of approximately 35 lots of collagen identified in

5   discovery. *Id.*, No. 60.  This collagen sample, as well as other samples, was tested

6   by BioCell's expert, Shri Thanedar, and the tests revealed, among other things, that

7   ███████████████████████████ *Id.*, No. 61.  The tests also indicated,

8   among other things, ██████████████████████████████████████

9   ███████████  *Id.*, No. 62.  The molecular weight requirement for the '180 and '348

10  patents is 50 Daltons to 10,000 Daltons. *Id.*, No. 30.

11  ████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████of

14  ████████████████████████████████████████████████████

15  ████████████████████████████ *Id.*, No. 63.[1]  Interestingly,

16  Defendants attached Thanedar's expert report to Veravanich's declaration in support

17  of the instant motion, but failed to include Appendix A which details the specific

18  claims Dr. Thanedar believes are being infringed.

19      Prior to the litigation, on or about June 14, 2010, Atlas Bioscience, Inc.

20  prepared a report based on its testing of the AR7. *Id.*, No. 64.  The June 14, 2010

21  report from Atlas Bioscience, Inc. ████████████████████████████████

22  ████████████████████████████████████████████████████

23

24

25  ████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████

Smith | Campbell | Clifford | Kearney | Gore

### 2.    Co-Existence of Infringement and False Advertising

Certificates of analysis from Robinson's supplier of collagen in 2007 to 2008, Nature's Thyme, LLC, indicate that the collagen product was "Chicken Collagen Powder, Type II" and the raw material source was "Chicken Sternum." *Id.*, No. 66. The patents-in-suit are related to a composition that is chicken collagen II derived from chicken sternum.

Certificates of analysis from Robinson's subsequent collagen supplier, Infiniti Marketing, indicate that in 2009 the collagen product was "Chicken Collagen Powder" and that the raw material was "Chicken Skin." *Id.*, No. 67. Dr. Thanedar reports that "type II collagen is most abundant in cartilage and is not found in the dermis (i.e., the skin)." Thanedar Declaration, Ex. B, p. 21. Dr. Thanedar further reports that "the dermis contains Collagen type I and small amounts of collagen type III which is found in blood vessels." *Id.* Dr. Thanedar then concludes that "collagen type II cannot be obtained from skin." *Id.* However, Defendants' advertisements and labels for the Accused Products indicate that they contain Collagen II. *Id.*, No. 68.

### D.    Defendants Failure to Produce Documents

BioCell has filed a motion to compel production of additional documents that is currently pending before the Court (Doc. #91). As identified in the Declaration of Steven C. Smith in Support of Joint Stipulation re: Plaintiff BioCell Technology, LLC's Motion to Compel Supplemental Initial Disclosures and Further Production of Documents (Doc.#91-2) ("Smith Motion to Compel Declaration"), the following documents have not been produced by Defendants:

1.    Additional samples of the collagen used in the Accused Products from the other 35 or so lots received from the collagen supplier (Smith Motion to Compel Declaration, ¶¶ 13–14);[2]

---

[2] Defendants provided a single sample of the collagen II allegedly used in the Accused Products. This sample (Lot # 11101286) is from a February 2011 lot of

6

2.  Documents regarding the method for manufacturing the Accused Products (*Id.*, ¶ 20, Ex. G);

3.  Batch Records (*Id.*, ¶ 24, Ex. L);

4.  Material Safety Data Sheets (*Id.*);

5.  Packing Slips (*Id.*);

6.  Formulations (*Id.*, ¶¶ 11–12);

7.  Sales records to show gross sales of the Accused Products (*Id.*, ¶¶ 16–17, 25–26, Exs. N–O);

8.  Sales record to show quantity of the Accused Products sold (*Id.*);

9.  Financial statements, i.e., profit and loss statements, balance sheets, cash flow statements, etc. (*Id.*); and,

10. Among others.

The failure to produce the above-mentioned documents has significantly hindered BioCell's ability to determine how many lots of collagen were type I (false advertising) and how many lots were type II (patent infringement).  Although the Court ruled in its March 22, 2013 minute order (Doc. #131) that Defendants had provided sufficient samples in response to BioCell's Requests for Production, BioCell intends to file a supplemental brief further explaining to the Court that Defendants single sample of collagen powder from a single lot is deficient as there are approximately 35 different lots of collagen identified by Defendant in discovery. *See* Smith Declaration, ¶ 17.

collagen from Infiniti Marketing.  Good Manufacturing Practices require manufactures like Defendant Robinson to retain samples for several years, but no other samples were provided.  There are 35 different lots of collagen identified.

7

Smith | Campbell | Clifford | Kearney | Gore

1

2

3

4

5   T

## III.   ARGUMENT

### A.   Legal Standard

A court should not grant summary judgment unless the pleadings and supporting documents, when viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If the evidence is such that a reasonable jury could return a verdict for the nonmoving party, summary judgment is not proper. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253 (1968). "All that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 288-89. If reasonable minds could differ as to the import of the evidence, summary judgment is not proper. *Wilkerson v. McCarthy*, 336 U.S. 53, 62 (1949).

Any inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Defendants fail to meet their burden because they mischaracterize the record and are trying to take advantage of their failure to produce responsive documents. Plaintiff introduces ample evidence to demonstrate that there are genuine issues of

Smith | Campbell | Clifford | Kearney | Gore

1  material fact. Defendants' motion seeking summary judgment should be denied in

2  its entirety.

3  **B.  BioCell's Technical Expert Reported Infringement, Plaintiffs**

4  **Admitted Infringement, and Tests on the Accused Product Support**

5  **Infringement.**

6  Defendants erroneously claim that "Plaintiffs' factually contradictory patent

7  infringement and false marking claims cannot both be established."  Motion, 4:24 –

8  5:1.

9  In reality, there is evidence of both false advertising and patent infringement.

10  Evidence suggests the formulation for the Accused Product changed over time.

11  Defendants were using chicken collagen II derived from chicken sternum when

12  Nature's Thyme was their supplier (2007 to 2009), but then started using collagen I

13  derived from chicken skin when Infiniti Marketing became their supplier (2009 to

14  2011).  In other words, Defendants were infringing the patents when it used collagen

15  II supplied by Nature's Thyme, and then started falsely advertising that their product

16  contained collagen II when it started using collagen I from Infiniti Marketing.

17  Dr. Thanedar's report, Defendants' admissions, and the tests on certain

18  samples of the Accused Product supports claims for both false advertising and

19  patent infringement.

20  **1.  Defendants admitted the Accused Products Contain Collagen II.**

21  Defendants assert that summary judgment of non-infringement is appropriate

22  because Plaintiffs cannot establish that the Accused Products contain collagen type

23  II.  Defendants rely on a portion of Dr. Thanedar's report where he concludes that

24  the collagen in the Accused Products is not collagen type II.  Motion, 5: 17–24.

25  

26  

27  This alone is

28  enough to raise a triable issue of fact for patent infringement.

9

Smith | Campbell | Clifford | Kearney | Gore

Defendants admitted in depositions that the Accused Products contain collagen type II from chicken sternum. ███████████████████

██████████████████████████████████

██████████████████ Moreover, Defendant's only produced a single sample of collagen from a single lot. If samples of collagen Defendants purchased from Nature's Thyme, LLC were produced, the evidence suggests that tests would show the collagen is type II from chicken sternum. Defendants' failure to produce additional samples for testing has significantly hindered Dr. Thanedar's ability to make expert conclusions.

████████████████████████████████████████████████████████████████████████████████████████

There is a triable issue of fact about whether the Accused Products contain chicken collagen type II.

## 2. Defendants have admitted the Accused Products contain collagen derived from chicken sternum.

Defendants also assert that there can be no infringement of the patents-in-suit because Dr. Thanedar's report states that the collagen used in the Accused Products is not derived from chicken sternum. Motion, 8:11–15.

████████████████████████████████████████████████████████████████████████████████ Defendants cannot escape their admissions.

Smith | Campbell | Clifford | Kearney | Gore

1  A jury will have to decide whether the evidence suggests patent infringement,

2  false advertising, or both.  There is a triable issue of fact about whether the Accused

3  Products contain collagen derived from chicken sternum.

4      **3.**    **BioCell can establish the molecular weight of the collagen in the**

5              **Accused Products has changed over time.**

6  Defendants assert that claims in the '327, '319, and '841 patents should be

7  summarily adjudicated because BioCell cannot establish the Accused Products have

8  a molecular weight other than 4,000 Daltons.  Motion, 8: 18–23.

9  Defendants again are trying to capitalize on their failure to produce additional

10  samples and documents which BioCell believes will show that the formulation of

11  the Accused Product changed over time.  BioCell believes, and evidence suggests,

12  that the Accused Products changed over time and that they infringe the patents-in-

13  suit in different ways depending on which lot of collagen was put into the products.

14  

15  i

16  There is a material issue of fact whether this constitutes infringement. Claim 4 of the

17  '327 patent does not require any molecular weight range.  The '180 and '348 patents

18  have a molecular weight range of 50 Daltons to 10,000 Daltons.

19  The pre-litigation tests on the Accused Products tells a different story—which

20  is consistent with the theory that Defendants have changed the collagen in their

21  product over time.

22  The July 29, 2010 report from V-Labs, Inc. indicates the molecular weight of

23  

24  The molecular weight requirement

25  of the '327 patent is 1,500 to 2,500 Daltons.  The molecular weight requirement for

26  the '180 and '348 patents is 50 Daltons to 10,000 Daltons.

27  There is a triable issue of fact about whether the collagen in Defendants

28  product changed over time and had different molecular weights depending on which

11

Smith | Campbell | Clifford | Kearney | Gore

1  lot was used.  At the very least, despite Defendants failure to produce samples and

2  documents, BioCell can show the molecular weight of the collagen was below 2,000

3  Daltons at one time and then 4,000 Daltons at another time.

4       **4.     AR8 contains 10% hyaluronic acid and pre-litigation tests show**

5            **that AR7 contained over 10% hyaluronic acid.**

6       Defendants assert that claims in the '841, '180, and '348 patents should be

7  summarily adjudicated because BioCell cannot establish the Accused Products have

8  more than 6% hyaluronic acid.  Motion, 10:9–15.

9       Defendants ignore crucial documents that have been produced in this case.

10       The '841, the '180 and the '348 patents require 10% Hyaluronic Acid and/or

11  20% Chondroitin Sulfate.

12  ████████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████████

14       There is a material issue of fact about whether AR7 contained 10%

15  Hyaluronic Acid when it contained collagen that came from the same lot tested by

16  Atlas Bioscience, Inc. in June 2010.

17       **C.     Defendants Failed to Produce Documents Which Would Indicate**

18            **that it Manufactured the Collagen in the Accused Products or Had**

19            **it Made to Specification.**

20       Defendants assert that "[b]ecause none of the Defendants engage in

21  manufacturing, Plaintiffs cannot establish that they have practiced the

22  manufacturing steps required by [certain] claims" of the '327, the '348, and the '180

23  patent.  Motion, 13:1–2.

24       Defendants do not understand that they can still infringe the patents-in-suit

25  even if the collagen powder was manufactured by another.  It is settled law that if

26  Defendants had the collagen powder manufactured to their own specifications then

27  they still directly infringe the patents.  *See Faraoudja Labs, Inc. v. Dwin Elecs., Inc.*,

28  1999 U.S. Dist. LEXIS 22987, *17 (N.D. Cal. 1999)(citing *Metal Film Co. v.*

Smith | Campbell | Clifford | Kearney | Gore

12

1   *Metlon Corp.*, 316 F. Supp. 96, n.12 (S.D.N.Y. 1970) ("[t]hat defendants choose to

2   have the [first step of the process] done by outside suppliers does not mitigate their

3   infringement of the overall process.")); *see also Crowell v. Baker Oil Tools, Inc.*,

4   143 F.2d 1003, 1004 (9th Cir. 1944) ("it is obvious that one may infringe a patent if

5   he employs an agent for that purpose or have the offending articles manufactured for

6   him by an independent contractor").

7        Defendants have failed to produce documents "regarding the manufacture" of

8   the Accused Products."  Such documents would indicate whether Defendants are

9   simply purchasing collagen or having it made to specification.  If Defendants are

10  having the collagen powder made to specification then they can still directly infringe

11  the method of manufacturing claims.

12       Until BioCell receives document from Defendant it cannot adequately prove

13  infringement of these claims.  Defendants should not be rewarded for their failure to

14  produce documents, and thus their motion for summary judgment of non-

15  infringement with respect to the claims covering methods of manufacturing should

16  be denied.

17      **D.**    **The Accused Products are Sold with Instructions to be Taken**

18            **Orally.**

19       Defendants assert that they cannot infringe certain claims of the patents-in-

20  suit because they do not practice either a method of administering or method of

21  treating end users with the patented composition.  Motion, 13:6–14:4.  Defendants

22  are taking an overly strict interpretation of the patent claims and continue to

23  selectively ignore the facts.

24       Certainly, Defendants do not insert the capsule into their customers' mouth.

25  BioCell, however, does not have to meet Defendants' overly strict interpretation of

26  "administer."  Defendants instruct their customers to take two capsules a day by

27  mouth.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

Smith | Campbell | Clifford | Kearney | Gore

Smith | Campbell | Clifford | Kearney | Gore

1    Defendants also infringe the claims related to "[a] method for treating an

2    individual with a connective tissue disorder."  In an advertisement for AR7,

3    Defendants state that "[t]ype II collagen is a pretty amazing material.  It has certain

4    innate properties that can *heal* wounds.  It's been shown in many studies to fortify

5    unhealthy joints, improve mobility, and support overall joint health." (Emphasis

6    added). [Biocell_00704].  Moreover, Defendants use the 2008 clinical study

7    published in the Nutritional Journal as an advertisement, which states, among other

8    things, [t]he *patients* were in the *treatment group* were given AR7 Joint Complex

9    orally, 1 capsule daily for 12 weeks. . ." (Emphasis added). [Biocell_00692].

10       There is a material issue of fact as to whether instructing a customer to take

11   the Accused Products constitutes a method for administering or a method for

12   treatment.  Similarly, there is a material issue of fact as to whether the Accused

13   Products are used as a method for treating an individual with a connective tissue

14   disorder.

15       **E.    There is a Triable Issue as to Whether Defendants are Liable for**

16            **Induced Infringement.**

17       Defendants' extend their strict interpretation of "administer" to assert that

18   BioCell cannot prove Defendants induced infringement of the claims related to

19   methods of administering.  Motion, 14:6–15:10.  As shown above, Defendants have

20   directly infringed the claims related to a method of administering the patented

21   composition.  There is also a triable issue as to whether Defendants induced

22   infringement of these claims, even using Defendants' strict interpretation of

23   "administer."

24       The customers who have their testimonials on Defendants' websites admit to

25   using the Accused product.  These customers, under Defendants' definition of

26   "administer," would be direct infringers by their admissions.  35 U.S.C. § 271

27   (Except as otherwise provided in this title, whoever without authority makes, uses,

28   offers to sell, or sells any patented invention, within the United States or imports

14

1  into the United States any patented invention during the term of the patent therefor,

2  infringes the patent.) (Emphasis added).  The corporate defendants would then be

3  indirect infringers by inducing customers to administer the Accused Products with

4  specific intent as demonstrated by the instructions on the label to take two capsules.

5  *See Meyer v. Intellectual Props. v. Bodum, Inc.*, 690 F.3d 1354, 1366 (Fed. Cir.

6  2012).

7          Defendants are correct to point out that BioCell has failed to depose a

8  *purchaser* of the Accused Products.  Motion, 14:19–22.  This is hardly the fault of

9  BioCell as Defendants have failed to produce the information concerning the sales

10  of the Accused Products—which are known to include customer names and

11  addresses.  Defendants objected to disclosing this information because it is allegedly

12  confidential.  This objection is meritless in light of the parties' stipulated protective

13  order.  As the Court pointed out in its minute order regarding BioCell's motion to

14  compel (Doc. # 131), "the parties "Stipulated Protective Order for Litigation

15  Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets"

16  expressly contemplated that discovery in this action would necessitate the disclosure

17  of highly sensitive confidential information and/or trade secrets . . ."

18          Defendants are incorrect to point out that BioCell has failed to depose a *user*

19  of the Accused Products.  Motion, 14:19–22.  Defendant Hahn testified that he uses

20  AR7.  Under Defendants' definition of administer, Defendant Hahn is a direct

21  infringer of the Accused Products and the corporate defendants are inducing his

22  infringement by instructing him on the label to orally take (i.e., administer) the

23  capsules every day.  Therefore, the Court does not have to make an assumption

24  about customers administering the product as suggested by Defendants.  Motion,

25  14:22 – 27 (citing *Myer*, 690 F.3d at 1370).

26          Accordingly, there is a triable issue as to whether Defendants induced its

27  customers to use the Accused Products.  In addition, BioCell has been prevented

28

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

Smith | Campbell | Clifford | Kearney | Gore

from discovering information from Defendants' customers and Defendants should not be allowed to capitalize on their decision to withhold documents.

## IV.    CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment of non-infringement should be denied in its entirety because all the arguments therein are triable issues of fact.

Dated:  March 25, 2013          SMITH CAMPBELL CLIFFORD KEARNEY GORE
                                A Professional Law Corporation


                                By:  _/s/ Steven C. Smith_____
                                     STEVEN C. SMITH
                                     DERRICK C. HUGHES
                                     JASON K. SMITH
                                Attorneys for Plaintiffs

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

Smith | Campbell | Clifford | Kearney | Gore

1

2

**CERTIFICATE OF SERVICE**
*Biocell Technology v. Arthro-7*
*USDC Central Case No. 8:12-cv-00516-JVS-RNB*

3

4

       I declare that I am employed in the City of Santa Ana, County of Orange, State of
California.  I am over the age of eighteen years and not a party to the within action; my business
address is:  SMITH CAMPBELL CLIFFORD KEARNEY GORE, 1800 North Broadway, Suite
200, Santa Ana, California 92706

5

6

       On March 25, 2013, I served the foregoing document(s):

7

8

**MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT**

9

on all interested parties in this action by the method of service listed below [ ] the original [**X**] a
true copy thereof to the addresses described as follows:

10

**SEE ATTACHED SERVICE LIST**

11

12

[ ]     *[MAIL]* by placing the document(s) listed above in a sealed envelope with postage thereon
fully prepaid, in the United States mail at Santa Ana, California, addressed as set forth below:

13

14

15

       I am readily familiar with the firm's practice of collection and processing correspondence
for mail.  Under that practice, it would be deposited with the U.S. Postal Service on the same day
with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion
of the party served, service is presumed invalid if postal cancellation date or postage meter date is
more than one day after date of deposit for mailing in affidavit.

16

17

[ ]     *[FACSIMILE]* by transmitting *Via Facsimile* the document(s) listed above to the fax
number(s) set forth below on this date before 5:00 p.m.

18

[x ]     *[OVERNIGHT MAIL]* by *Federal Express* of the document(s) listed above to the
person(s) at the address(es) set forth below.

19

[ ]     *[PERSONAL DELIVERY]* by causing delivery by _____ of the document(s) listed
above to the person(s) at the address(es) set forth below.

20

21

[]     *[EMAIL]* by causing to be sent via electronic mail the above mentioned document to the
parties on the attached service list.  This is pursuant to agreement of counsel on March 7, 2013.

22

23

[ ]     *[BY COURT'S CM/ECF SYSTEM]* Pursuant to Local Rule, I electronically filed the
documents with the Clerk of the Court using the CM/ECF system, which sent notification of that
filing to the persons listed above.

24

       I declare that I am employed in the office of a member of the bar of this court

25

at whose direction the service was made.

26

       Executed on March 25, 2013, in Santa Ana, California.

27

28

Kaylene Canaan

1

**SERVICE LIST**
*Biocell Technology v. Arthro-7*
*USDC Central Case No. 8:12-cv-00516-JVS-RNB*

| | |
|---|---|
| Daniel Do-Khanh<br>NgDo-Khahn, PC<br>8001 Irvine Center Drive,<br>Suite 1090<br>Irvine, CA 92618<br>Phone: 949-748-8338<br>Fax: 949-748-8339<br>Email: daniel@ndklaw.com<br><br>Anthony Cartee<br>333 City Blvd. West,<br>17th Floor<br>Orange, CA 92868<br>Phone: 714-938-3887<br>Email: acartee@ac-legal.com<br><br>Lester J. Savit<br>ONE LLP<br>4000 MacArthur Blvd.,<br>West Tower, Suite 1100<br>Newport Beach, CA 92660<br>Phone: 949-502-2870<br>Email: lsavit@onellp.com<br><br>John Lord<br>ONE LLP<br>4000 MacArthur Blvd.,<br>West Tower, Suite 1100<br>Newport Beach, CA 92660<br>Phone: 949-502-2870<br>Email: jlord@onellp.com<br><br>Polaphat Veravanich<br>ONE LLP<br>4000 MacArthur Blvd.,<br>West Tower, Suite 1100<br>Newport Beach, CA 92660<br>Phone: 949-502-2870<br>Email: pv@onellp.com | Counsel for ARTHRO-7, INC., a California corporation; ROBINSON PHARMA, INC., a California corporation; GERO VITA, INC., a California corporation; NUTRIVITA LABORATORIES, INC., a California corporation; SULIMAN JAHANGIRI, an individual; JOHN HAHN, an individual; TUONG NGUYEN, an individual; CHRISTINE NGUYEN, an individual; DAN NGUYEN |