UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 12-00516-JVS (RNBx)                     Date   April 16, 2013

Title   Biocell Technology LLC v. Arthro-7, et al.

| | |
|---|---|
| Present: The Honorable | James V. Selna |

| Dwayne Roberts | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   (IN CHAMBERS)

<u>Order re: Plaintiffs' Motion for Partial Summary Judgment on Defendants' Invalidity Defenses and Counterclaims</u>
&
<u>Cross-Motions for Summary Judgment of Invalidity Based on Indefiniteness</u>

        This case concerns five patents duly issued by the U.S. Patent & Trademark Office ("USPTO"), U.S. Patent Nos. 6,025,327 ("the '327 Patent"); 6,323,319 ("the '319 Patent"); 6,780,841 ("the '841 Patent"); 7,091,180 ("the '180 Patent"); and 7,799,348 ("the '348 Patent") (collectively, the "patents-in-suit"). (Statement of Undisputed Facts ("SUF") ¶ 1, Docket No. 115.) Defendants[1] served BioCell Technology, LLC ("BioCell") and Intellipi, LLC ("Intellipi") (collectively, "Plaintiffs") with their Invalidity Contentions on October 26, 2012. (SUF ¶ 4; see Invalidity Contentions, Supplemental Declaration of Jennifer Trusso ("Trusso Suppl. Decl.") Ex. A, Docket No. 144-1.) Defendants served BioCell with their Federal Rule of Civil Procedure 26 Expert Report on Invalidity, by Dr. Dale P. Devore ("Devore"), on March 8, 2013. (SUF ¶ 5; see Devore Expert Report, Declaration of John E. Lord ("Lord Decl.") Ex. H, Docket No. 140-1.)

---

        [1] Defendants are Robinson Pharma, Inc. ("Robinson"); the Retail Defendants, Arthro-7, Inc. ("Arthro-7"), GeroVita, Inc. ("GeroVita"), Nutrivita Laboratories, Inc. ("Nutrivita"), and VitaStrong, Inc. ("VitaStrong"); and the Individual Defendants, Suliman Jahangiri ("Jahangiri"), John Hahn ("Hahn"), Tuong Nguyen ("T. Nguyen"), Christine Nguyen ("C. Nguyen"), and Dan Nguyen ("D. Nguyen") (collectively, "Defendants").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 12-00516-JVS (RNBx)          Date   April 16, 2013

Title   Biocell Technology LLC v. Arthro-7, et al.

Plaintiffs move for partial summary judgment on Defendants' defenses and counterclaims of invalidity, Counts 1–5 of the First Amended Counterclaim and the First Affirmative Defense. (Motion for Partial Summary Judgment ("Invalidity Motion"), Docket Nos. 112–13.) Defendants oppose. (Invalidity Opposition, Docket No. 140.) Plaintiffs replied. (Invalidity Reply, Docket No. 165.) For the following reasons, the motion is **GRANTED**.

Defendants cross-move for summary judgment of invalidity based on indefiniteness. (Motion for Summary Judgment of Invalidity ("Indefiniteness Motion"), Docket No 111.) Plaintiffs oppose. (Indefiniteness Opposition, Docket No. 142.) Defendants have replied. (Indefiniteness Reply, Docket No. 162.) For the following reasons, the motion is **DENIED**.

I.    <u>FACTUAL</u> <u>BACKGROUND</u>[2]

BioCell owns and/or is the exclusive licensee of the patents-in-suit, which relate to the composition, and methods of manufacturing, administering, and using collagen type II, which is derived from chicken sternum. Under the patents-in-suit, the collagen generally must be reduced to a specific molecular weight range. The range claimed by Claims 1 and 2 of the '327 Patent and Claim 1 of the '319 Patent is between 1500–2500 daltons.[3] ('327 Patent at 6:2–5; '319 Patent at 6:2–13.) The molecular weight range claimed by the '841 Patent is between 5500–10,000 daltons. (NI–SUF ¶ 16; '841 Patent at 10:53–65.) The molecular weight range claimed by the '180 and '348 Patents is between 50–10,000 daltons. (NI–SUF ¶¶ 20, 27; '180 Patent at 10:56–60; '348 Patent at 10:49–52.) The composition covered by the '841, '180, and '348 Patents also must have at least 10% hyaluronic acid and/or 20% chondroitin sulfate. (NI–SUF ¶¶ 15, 20, 27.)

**A.    Anticipation and Obviousness**

---

[2]Unless otherwise noted, the facts set forth are uncontroverted. The Court discusses further facts in its analysis as necessary. To the extent challenged evidence is material, objections are resolved as stated herein. Objections to evidence the Court does not rely on are immaterial and not ruled upon. The Court does not rely on legal conclusions presented as facts.

[3]A dalton is an atomic mass unit named after English chemist John Dalton (d. 1844).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 12-00516-JVS (RNBx)                    Date   April 16, 2013

Title   Biocell Technology LLC v. Arthro-7, et al.

On October 4, Ahmad Alkayali, the named inventor of the '327 and '319 Patents, sent a letter to David Hagman of Hormel Foods Corporation, which he later submitted to the USPTO in a declaration. (SUF ¶ 6; Hormel Memorandum & Alkayali Declaration, Lord Decl. Ex. G.) In the Memorandum, Alkayali confirmed his interest in the formulation and manufacturing of "Chicken Collagen Type II (Food Grade)" from type II collagen extracted from chicken sternal cartilage and hydrolyzed powder protein by Hormel. (Hormel Memorandum, at 1.) Hormel also received a flowchart with the protocol for preparing the product: (1) cuttering frozen sternal chicken cartilage, (2) suspension in water, (3) enzymatic hydrolysation; (3) sterlization; (4) filtration; (5) concentration under vaccum; (6) spraydrying; and (7) packing. (Id. at 2.) It is not clear whether the protocol was sent concurrently with the Hormel Memorandum.

Defendants' prior art references include a "Moore" reference, U.S. Patent No. 5,645,851 ("the '851 Patent"); "Milan" reference, U.S. Patent No. 5,948,766 ("the '766 Patent"); "Trentham" reference, U.S. Patent No. 5,399,347 ("the '347 Patent"); "Koepff" reference, U.S. Patent No. 4,804,745 ("the '745 Patent"); "Sturrock" reference, U.S. Patent No. 5,840,848 ("the '848 Patent"); "Alkayali I" reference, the '327 Patent; "Alkyali II" reference, the '319 Patent; "Lane" reference, U.S. Patent No. 5,075,112 ("the '112 Patent"); and two articles, "Methods of Enzymology, Structural and Contractile Proteins, Part A: Extracellular Matrix Leon Cunning, 1982 Volume 82"; and "Suppression of type II collagen-induced arthritis by intragastric administration of soluble type II collagen." (SUF ¶¶ 9, 11, 13, 15, 17, 19, 21, 23, 25, 27.)

## B.   Indefiniteness

In their Invalidity Contentions, Defendants asserted that Claims 1, 2, 4, and 7 of the '327 Patent; Claim 1 of the '319 Patent; Claims 1, 9, 16, and 17 of the '841 Patent; Claims 1, 8 and 23 of the '180 Patent; and Claims 1, 16, 25 of the '348 Patent are indefinite because "one skilled in the art would not understand the bounds of the claims in which they appear when read in light of the specification." (Invalidity Contentions, at 353–54.) The Invalidity Contentions do not identify the terms Defendants take issue with. Plaintiffs did not seek clarification.

Devore asserts that Claims 1–3 and 7 of the '327 Patent, Claims 1–8 of the '319 Patent; Claims 1–13 and 16 of the '841 Patent; Claims 1–23 of the '180 Patent; and Claims 1–6, 8–16, and 24–25 of the '348 Patent are indefinite because "the term 'having

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 12-00516-JVS (RNBx) | Date | April 16, 2013 |

| | |
|---|---|
| Title | Biocell Technology LLC v. Arthro-7, et al. |

an average molecular weight of between about [low-end] and [high-end] daltons' by itself is not defined in the patent," the methodology to determine molecular weight is not defined in the patent, and the specification provides no guidance on how to measure weight. (Devore Expert Report, at 11, 15, 26, 31, 36.)

II.   LEGAL STANDARDS

    **A.   Summary Judgment**

    Summary judgment is appropriate only where the record, read in the light most favorable to the nonmoving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary adjudication, or partial summary judgment "upon all or any part of [a] claim," is appropriate where there is no genuine issue of material fact as to that portion of the claim. Fed. R. Civ. P. 56(a), (b); see also Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks omitted).

    The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If the moving party meets its burden, then the nonmoving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. See id. at 322–23. If the nonmoving party meets this burden, then the motion will be denied. Nissan Fire & Marine Ins. Co. v. Fritz Co., 210 F.3d 1099, 1103 (9th Cir. 2000). Material facts are those necessary to the proof or defense of a claim, and they are determined by reference to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322. A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (citations and internal quotation marks omitted). In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00516-JVS (RNBx) | Date | April 16, 2013 |
|---|---|---|---|

| Title | Biocell Technology LLC v. Arthro-7, et al. |
|---|---|

inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and the opposing party must produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

    **B.**    **Patent Invalidity**

    To obtain summary judgment of invalidity, a moving party must overcome the statutory presumption of 35 U.S.C. § 282 ("Section 282") that issued patent claims are valid. Section 282 mandates that "[a] patent shall be presumed valid" and that "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. § 282. A party seeking to overcome the statutory presumption and establish the invalidity of an issued patent claim must prove the invalidity by clear and convincing evidence. Apple Computer, Inc. v. Articulate, Sys., Inc., 234 F.3d 14, 26 (Fed. Cir. 2000).

**III.**    <u>DISCUSSION</u>

    Plaintiffs seek partial summary judgment on two grounds: (1) the patents-in-suit are entitled to a presumption of validity under 35 U.S.C. § 282; and (2) Defendants' Invalidity Contentions and the Devore Expert Report are insufficient to create a triable issue of fact as to the validity under 35 U.S.C. § 102 and 103. The Court addresses each argument in turn.[4]

    **A.**    **Devore Expert Report**

    Defendants rely on the Devore Expert Report for parts of their anticipation, obviousness, and indefiniteness arguments. (See generally Invalidity Opposition; Indefiniteness Motion.) Plaintiffs argue that none of their "uncontroverted facts" are

---

    [4]Per the Invalidity Opposition, Defendants are not pursuing enablement or written description claims and are relying only on the prior art references in the Devore Expert Report. (Invalidity Opposition, at 6 n.2.) Defendants also claim that Plaintiffs never asked if the Devore Expert Report limited their prior art references. (Id.) Defenses and counterclaims premised on enablement, written description, or prior art references outside the Devore Expert Report are dismissed. The parties should endeavor to meet and confer more comprehensively.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00516-JVS (RNBx) | Date | April 16, 2013 |
|---|---|---|---|

| Title | Biocell Technology LLC v. Arthro-7, et al. |
|---|---|

"controverted by declaration or other written evidence filed in opposition" to their motion. The Court agrees as to the Devore Expert Report, whose substantive weight also is challenged by Plaintiffs, because it is inadmissible evidence and thus cannot be used to prove invalidity by clear and convincing evidence. Apple Computer, Inc., 234 F.3d at 26. Unsworn expert reports prepared in compliance with Rule 26(a)(2) are not affidavits or depositions, or otherwise admissible evidence, for the purpose of ruling on a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Volterra Semiconductor Corp. v. Primarion, Inc., 796 F. Supp. 2d 1025, 1038–39 (N.D. Cal. 2011) (citing King Tuna, Inc. v. Anova Food, Inc., No. CV 07-7451 ODW (JWJx), 2009 WL 650732, at *3–4 (C.D. Cal. Mar. 10, 2009)). There is no sworn statement in the Devore Expert Report or a sworn declaration from Devore with the report attached.[5] That alone is grounds for granting most of Plaintiffs' motion. Plaintiffs also are entitled to summary judgment on the merits.

## B.    Anticipation – Validity Under 35 U.S.C. § 102[6]

Defendants argue that the '327, '841 and '180 Patents are invalid based on anticipation and that factual issues preclude summary judgment for Plaintiffs.

### 1.    Anticipation of the '327 Patent

Defendants argue that there is a genuine dispute as to whether the Hormel Memorandum shows that Alkayali's invention was in public use or on sale and thus anticipates Claims 1 and 7 of the '327 Patent under 35 U.S.C. § 102.[7] (Invalidity

---

[5]Devore's only submitted declaration addresses indefiniteness alone and does not include a copy of the Devore Expert Report. (See Declaration of Dale P. Devore in Support of Indefiniteness Motion ("Devore Decl."), Docket No. 116.)

[6]Amendments to Title 35 took effect on March 16, 2013. See Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 3(n) (2011). These amendments do not affect this lawsuit, and the Court relies on the previous version of the statutes. See id. (establishing that amendments apply to patents and applications with an effective filing date after March 16, 2013).

[7]Claim 1 recites, "Chicken sternal cartilage-derived material comprising hydrolyzed collagen type II, said hydrolyzed collagen type II having an average molecular weight of between about 1,500 daltons and 2,500 daltons." (SUF ¶ 30.) Claim 7 recites, "A method of providing collagen type II as a nutritional supplement, comprising orally administering to an individual a daily dosage of chicken

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 12-00516-JVS (RNBx) | Date | April 16, 2013 |

| | |
|---|---|
| Title | Biocell Technology LLC v. Arthro-7, et al. |

Opposition, at 11.) They emphasize that (1) the Memorandum is dated October 1994, before the filing and priority dates for the '327 Patent; (2) it was sent to a U.S. address via fax; and (3) Alkayali stated that he was diligently negotiating with Hormel regarding the commercial details for production of the hydrolyzed collagen type II until after January 5, 1996 (Alkayali Declaration ¶ 5, at Ex. R-2).[8] (Invalidity Opposition, at 12.) The Court disagrees.

First, only 35 U.S.C. § 102(b) applies. The Memorandum describes Alkayali's invention and shows no knowledge or use of it by others before he invented it. See Invitrogen Corp. v. Biocrest Mfg., L.P., 424 F.3d 1374, 1381 (Fed. Cir. 2005) ("[A]n inventor's own work cannot be used to invalidate patents protecting his own later inventive activities unless, *inter alia*, he places it on sale or uses it publicly more than a year before filing."); see 35 U.S.C. § 102(a) (A patent is anticipated and therefore invalid if "the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent.").

Second, as a matter of law, the Hormel Memorandum does not establish that Alkayali's invention was in public use or on sale under 35 U.S.C. § 102(b). A patent is anticipated if, *inter alia*, it was "in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b).Whether a patent is invalid for public use is a question of law based on underlying facts. Netscape Commc'ns Corp. v. Konrad, 295 F.3d 1315, 1320 (Fed. Cir. 2002). The test for whether an invention is ineligible due to the public use bar "is whether the purported use: (1) was accessible to the public; or (2) was commercially exploited." Invitrogen, 424 F.3d at 1380. Consideration of public use includes analysis of, *inter alia*, the nature of and public access to activities involving the invention, confidentiality obligations imposed upon observers, commercial exploitation, and the circumstances surrounding testing and experimentation. Id. An invention is in public use if it is shown

---

sternal cartilage-derived material comprising hydrolyzed collagen type II, said hydrolyzed collagen type II having an average molecular weight of between about 1,500 daltons and 2,500 daltons." (SUF ¶ 31.)

[8]Defendants believe Alkayali's testimony may be relevant to establish any on-sale or public use issues, but the hypothetical possibility alone cannot raise a triable issue. See Matsushita, 475 U.S. at 586 (The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 12-00516-JVS (RNBx) | Date | April 16, 2013 |

| | |
|---|---|
| Title | Biocell Technology LLC v. Arthro-7, et al. |

to or used by an individual other than the inventor under no limitation, restriction, or obligation of confidentiality. Petrolite Corp. v. Baker Hughes Inc., 96 F.3d 1423, 1425 (Fed. Cir. 1996) (citing In re Smith, 714 F.2d 1127, 1134 (Fed. Cir. 1983)). "[U]se of an invention by the inventor himself, or of any other person under his direction, by way of experiment, and in order to bring the invention to perfection, has never been regarded as such a use." City of Elizabeth v. Am. Nicholson Pavement Co., 97 U.S. 126, 134 (1877).

In Egbert v. Lippman, 104 U.S. 333, 335–37 (1881), the Supreme Court found public use where the inventor gave two samples of a corset spring to a friend, who used them for more than two years before the inventor applied for a patent, even though the invention was not publicly visible. In Invitrogen, 424 F.3d at 1379–83, the Federal Circuit found no public use where Invitrogen used the claimed process before the critical date to produce competent cells in its own laboratories, because it did not sell the claimed process or products made with it, kept its use of the process confidential and within the company, and did not receive compensation for exploiting its cells.

The Hormel Memorandum indicates Alkayali's "interest in the formulation and manufacturing" of Chicken Collagen Type II by Hormel and "intentions . . . to market the collagen as food supplement." Alkayali states that after he sent the Memorandum, Hormel received the flowchart, and he also" diligently negotiated . . . regarding the commercial details for [Hormel's] production of the hydrolyzed collagen II, from the date of the protocol until after January 5, 1996, when the invention was finally reduced to practice." (Alkayali Declaration ¶¶ 4–5.) The product was first made commercially available after August 8, 1996. (Id. ¶ 6.)

Defendants proffer no evidence of public access to or purchase of the product before that date, which negates a finding of anticipation. See Bernhardt, LLC. v. Collezione Europa USA, Inc., 386 F.3d 1371, 1379 (Fed. Cir. 2004) (The purpose of the public use bar to patentability is to discourage "the removal of inventions from the public domain which the public justifiably comes to believe are freely available." (internal quotation marks omitted)). Unlike in Egbert and like in Invitrogen, there is no evidence from which a reasonable fact-finder could find that any one else received such a memorandum, was aware of or given the invention, or that Alkayali sold the protocol to anyone or received compensation before 1996. Hormel's mere knowledge of the invention, in itself and without a confidentiality agreement, cannot show public use. See City of Elizabeth, 97 U.S. at 136 ("It is not public knowledge of his invention that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 12-00516-JVS (RNBx)          Date   April 16, 2013

Title      Biocell Technology LLC v. Arthro-7, et al.

precludes the inventor from obtaining a patent for it, but a public use or sale of it."); Am.
Seating Co. v. USSC Grp., 514 F.3d 1262, 1268 (Fed. Cir. 2008) ("[T]he fact that the
inventors revealed the prototype to a select group of individuals without a written
confidentiality agreement is not dispositive."). Without more, the facts are insufficient to
create a public use bar to patentability.

Accordingly, the Court **GRANTS** Plaintiffs' Invalidity Motion as to anticipation of
the '327 Patent under 35 U.S.C. § 102.

2.    Anticipation of the '841 and '348 Patents

Defendants argue that summary judgment should be denied because the '327 and
'319 Patents (the Alkayali Patents) anticipate Claims 1–13 and 16 of the '841 Patent and
Claims 1–11 of the '180 Patent (which they refer to as the Ishaq I and III Patents).[9] The
Court disagrees. Even if the Court considered the Devore Expert Report, there is no clear
and convincing evidence that the prior art anticipated the '841 and '348 Patents
inherently or otherwise.

Two limitations in Claims 1–8 of the '841 Patent are not in the '327 or '319
Patents: (1) the exact percentages of chondroitin sulfate and hyaluornic acid and (2) the
different molecular weight ranges. Defendants claim the former were inherently disclosed
by the Alkayali Patents because chondroitin sulfate and hyaluronic acid naturally occur in
the collagen type II. (Invalidity Opposition, at 12–13.) As to the other claims, Defendants
note that Devore opined that a person of ordinary skill in the art ("POSITA") would find
the elements were disclosed by the prior art and "provided claim charts that map each
element against the prior art references." (Id. at 13 (citing Devore Expert Report, at
16–21).)

A claim is "anticipated" under 35 U.S.C. § 102 "if each and every limitation is
found either expressly or inherently in a single prior art reference." IPXL Holdings,
L.L.C. v. Amazon.com, Inc., 430 F.3d 1377, 1381 (Fed. Cir. 2005); see Carella v.

---

[9]It is somewhat unclear whether Defendants also argue that the '180 Patent (the Ishaq II Patent)
also was anticipated. Heading IV.B of the Invalidity Opposition refers to the Ishaq II Patent, but the
argument focuses on the '348 and '841 Patents. The Court assumes the reference to Ishaq II was in
error. Even if not, the following analysis is applicable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 12-00516-JVS (RNBx)          Date  April 16, 2013

Title     Biocell Technology LLC v. Arthro-7, et al.

Starlight Archery & Pro Line Co., 804 F.2d 135, 138 (Fed. Cir. 1986) (Anticipation requires "the presence in a single prior art disclosure of all elements of a claimed invention arranged as in that claim."). "[A]nticipation by inherent disclosure is appropriate only when the reference discloses prior art that must necessarily include the unstated limitation." Transclean Corp. v. Bridgewood Servs., 290 F.3d 1364, 1373 (Fed. Cir. 2002). Thus, "for a claim to be inherent in the prior art it is not sufficient that a person following the disclosure sometimes obtains the result set forth in the claim, it must invariably happen." Glaxo, Inc. v. Novopharm Ltd., 830 F. Supp. 871, 874 (E.D.N.C. 1993), aff'd, 52 F.3d 1043 (Fed. Cir. 1995). "The mere fact that a certain thing *may result* from a given set of circumstances is insufficient to prove anticipation." Electro Medical Sys., S.A. v. Cooper Life Scis., 34 F.3d 1048, 1052 (Fed. Cir. 1994) (quotation marks omitted); see also Trintec Indus., Inc. v. Top-U.S.A. Corp., 295 F.3d 1292, 1297 (Fed. Cir. 2002) ("Inherency does not embrace probabilities or possibilities.").

The undisputed fact that the '327 and '319 Patents do not mention a molecular weight range of 5500–10,000 daltons as an express—much less inherent—claim limitation justifies granting summary judgment to Plaintiffs as to all the claims of the '841 Patent, which require an average molecular weight in that range.[10] See IPXL, 430 F.3d at 1381; see In re Arkley, 455 F.2d 586, 587 (Fed. Cir. 1972) ("[R]ejections under 35 U.S.C. § 102 are proper only when the claimed subject matter is identically disclosed or described in the prior art." (emphasis and internal quotation marks omitted)).

Devore does not discuss anticipation of the other patents-in-suit. Defendants instead rely on his statement that "compositions of enzymatically hydrolyzed collagen prepared from animal tissues, exhibiting molecular weights ranging from 1000 to 40,000

---

[10]Defendants and Devore to not address this fact. (See, e.g., Devore Expert Report, at 16–21.) Devore also claims that "the hyaluronic acid and chondroitin sulfate make up part of the cartilage content" and that a POSITA "would find that [the composition disclosed in the Alkayali Patents] contains depolymerized chondroitin sulfate and hyaluronic acid and the cartilage containing these elements is inherent in the reference." (Id. at 16–18.) Reading the facts in the light most favorable to Defendants, these statements do not establish that those compositions "invariably" include at least 10% hyaluronic acid and 20% chondroitin sulfate and never concentrations in a lower amount. See Glaxo, 830 F. Supp. at 874. Moreover, Devore's opinion generally amounts to "[c]onclusory expert assumptions" with no "specific facts" that raise triable issues. Sitrick v. Dreamworks, LLC, 516 F.3d 993, 1001 (Fed. Cir. 2008) (citation omitted); United States v. Various Slot Machines on Guam, 658 F.2d 697, 700 (9th Cir. 1981).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00516-JVS (RNBx) | Date | April 16, 2013 |

| Title | Biocell Technology LLC v. Arthro-7, et al. |

daltons was well known in the field, and the hyaluronic acid and chondroitin sulfate make up part of the cartilage content." (See Invalidity Opposition, at 13 (citing Devore Expert Report, at 16).) But they do not point to any single prior art containing the dalton limitations plus the chondroitin and hyaluronic acid limitations. They mix and match, at best, and though that may suffice for obviousness, it cannot create a triable issue as to anticipation. See Net MoneyIN, Inc. v. VeriSign, Inc., 545 F.3d 1359, 1371 (Fed. Cir. 2008) (For anticipation, "it is not enough that the prior art reference discloses part of the claimed invention, which an ordinary artisan might supplement to make the whole, or that it includes multiple, distinct teachings that the artisan might somehow combine to achieve the claimed invention," because such differences "invoke the question of obviousness."); Arkley, 455 F.2d at 587 (rejecting anticipation based on "picking, choosing, and combining various disclosures not directly related to each other by the teachings of the cited reference").

Accordingly, the Court **GRANTS** Plaintiffs' Invalidity Motion as to anticipation of the '841 and '348 Patents under 35 U.S.C. § 102.[11]

## C.    Obviousness – Validity Under 35 U.S.C. § 103

Defendants sole argument against summary judgment is that Devore provides "detailed claim charts disclosing where each claim element can be found in each prior art reference, and the specific combinations that invalidate the claims at issue." (Invalidity Opposition, at 15–16.) The Court disagrees.

An invention may not be patented if it would have been obvious at the time of the invention to a POSITA. 35 U.S.C. § 103(a). Obviousness is a question of law, KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 427 (2007), but factual inquiries underlie this determination: the scope and content of the prior art, the differences between the claims and the prior art, the level of ordinary skill in the art, and secondary considerations, Graham v. John Deere Co., 383 U.S. 1, 17–18 (1966).

Defendants' claim is premised on combining multiple prior art references. The question of motivation to combine may be addressed on summary judgment in

---

[11]The dependent claims in the Ishaq Patents, which generally mirror those in the Alkayali Patents, depend upon the validity of the independent claims, which the Court has upheld.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 12-00516-JVS (RNBx) | Date | April 16, 2013 |

| | |
|---|---|
| Title | Biocell Technology LLC v. Arthro-7, et al. |

appropriate circumstances. <u>Wyers</u> v. <u>Master</u> <u>Lock</u> <u>Co.</u>, 616 F.3d 1231, 1239 (Fed. Cir. 2010). "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." <u>KSR</u>, 550 U.S. at 416. According to the Federal Circuit, "[a] flexible teaching, suggestion, or motivation test can be useful to prevent hindsight when determining whether a combination of elements known in the art would have been obvious." <u>Norgen</u>, <u>Inc.</u> <u>v.</u> <u>Int'l</u> <u>Trade</u> <u>Comm'n</u>, 699 F.3d 1317, 1322 (Fed. Cir. 2012) (citations omitted). "The common sense and ordinary creativity" of a POSITA also are part of the analysis. <u>Id.</u> at 1323 (citing <u>KSR</u>, 550 U.S. at 420–21). Thus, one way obviousness can be proved "is by noting that there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims." 550 U.S. at 419–20. Defendants proffer no evidence of a known problem or that the inventions in the patents-in-suit were a combination of known elements with no more than expected results. Further, given the nature of the invention, expert testimony appears critical "to establish the existence . . . of a motivation to combine references."[12] <u>Wyers</u>, 6516 F.3d at 1240 n.5.

Even if Devore's report were admitted, Defendants could not prove obviousness by clear and convincing evidence. Compiling a list of prior art references that satisfy the various elements of a claim is inadequate to show that the composite of those elements—the claim—is "obvious." See <u>SmithKline</u> <u>Diagnostics,</u> <u>Inc.</u> <u>v.</u> <u>Helena</u> <u>Lab.</u> <u>Corp.</u>, 859 F.2d 878, 887 (Fed. Cir. 1998) (One "cannot pick and choose among the individual elements of assorted prior art references to recreate the claimed invention," without more.); <u>In</u> <u>re</u> <u>Rouffett</u>, 149 F.3d 1350, 1357 (Fed. Cir. 1998) ("If identification of each claimed element in the prior art were sufficient to negate patentability, very few patents would ever issue."). Indeed, "a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." <u>KSR</u>, 550 U.S. at 418. Thus, "it can be important to identify a reason that

---

[12]Comparatively, in <u>Perfect Web Techs., Inc. v. InfoUSA, Inc.</u>, 587 F.3d 1324 (Fed. Cir. 2009), the patented technology involved a method of managing bulk e-mail comprising essentially the steps of targeting a group of recipients, sending e-mail to those recipients, calculating the number of successfully delivered emails, and repeating the first three steps until reaching the desired quantity. <u>Id.</u> at 1329. The first three steps were disclosed in the prior art. The Federal Circuit upheld the district court's obviousness determination; concluded that no expert was required to support the obviousness determination because the technology was "easily understandable"; and endorsed its "common sense" reasoning, namely, that "[i]f 100 email deliveries were ordered, and the first transmission delivered only 95, common sense dictates that one should try again. One could do little else." <u>Id.</u> at 1329–30.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00516-JVS (RNBx) | Date | April 16, 2013 |
|---|---|---|---|

| Title | Biocell Technology LLC v. Arthro-7, et al. |
|---|---|

would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does.," because inventions typically "rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known." Id.

Devore generally opines that "each of [the] prior art references may be combined with other prior art references, or with information known to persons skilled in the art at the time of the alleged invention." (E.g., Devore Expert Report, at 6.) Throughout the report, he summarizes aspects of prior art; notes how separate prior art references may teach separate elements; and then opines, "In my opinion, there is motivation to combine these references to render obvious the asserted claim . . of the . . . patent." (E.g., id. at 9, 13–15, 22-25.) He also generally concludes "that there are no secondary considerations that overcome the obviousness determination." (E.g., id. at 11.) Devore and Defendants point to no teaching, suggestion, or other aspect of the prior art references that supports combining them in a certain way. Thus, Defendants' argument amounts only to a list of prior art references and conclusory assertions—an impermissible hindsight reconstruction that the Court need not rely upon to sustain an obviousness defense. See Avia Group Int'l, Inc. v. L.A. Gear Calif., Inc., 853 F.2d 1557, 1564 (Fed. Cir. 1988) ("[A]n expert's opinion on the legal conclusion of obviousness is neither necessary nor controlling.").

Accordingly, the Court **GRANTS** Plaintiffs' Invalidity Motion as to obviousness of the patents-in-suit under 35 U.S.C. § 103.

## D. Indefiniteness – Validity Under 35 U.S.C. § 112 ¶ 2

Defendants assert two independent grounds of indefiniteness. First, they argue that a POSITA would not know if a particular composition falls within the claims' scope because, according to Devore, there is "no single accepted standard the industry for measuring the 'average molecular weight' of a molecule" or guidance in the patents-in-suit on how to measure molecular weight. Second, they argue that a POSITA cannot determine the scope of the '180 Patent because it claims "a composition and a corresponding test analysis," which is an apparatus claim and method claim. (Indefiniteness Motion, at 1–2.)

Plaintiffs counter that Defendants waived their indefiniteness defense by failing to comply with the Court's Scheduling Order; the Northern District of California's Patent

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 12-00516-JVS (RNBx) | Date | April 16, 2013 |
| Title | Biocell Technology LLC v. Arthro-7, et al. | | |

L.R. 3-3; and Federal Rule of Civil Procedure 26(a). Plaintiffs also argue that Defendants stipulated to the meaning of "average molecular weight" and "corresponding test analysis" during claim construction. Finally, Plaintiffs argue that Defendants are wrong on the merits. The Court agrees.

      1.    <u>Motion to Strike and Waiver of the Indefiniteness Defense</u>

      a.    *Motion to Strike*

Plaintiffs move to strike Devore's Declaration in Support of the Invalidity Motion (Docket No. 116) and the portions of his report that address indefiniteness. (Motion to Strike, Docket No. 146.) Devore believes most of the asserted claims are indefinite because they do not explain how to measure "average molecular weight." His Declaration, unlike his report, claims there are several "standard methods" to determine collagens' molecular weight and that the average weight may vary based on the method, making it difficult for a POSITA to know whether a composition falls within the limitations of the claims. (Devore Decl. ¶¶ 29–33.) The Court already declined to admit the Devore Expert Report, and there is no reason to strike any portions. Because, as discussed below, Defendants waived or are estopped from bringing their indefiniteness claim, any failure to include "a complete statement of all opinions the expert will express and the basis and reasons for them" and "the data or other information considered by the witness in forming them" is "harmless." Fed. R. Civ. P. 26(a)(2)(B), 37(c)(1). Moreover, Dr. Shri Thanedar's Declaration ("Thanedar Decl.," Docket No. 142-1) rebuts Devore. Thanedar claims the standard method to measure "average molecular weight" is gel permeation chromatography ("GPC"), and that even if a different method were employed, "any variation between the measured molecular weight of any product would be a small variation" and inconsequential. (<u>Id.</u> ¶¶ 10–11.)

      b.    *Status of the Indefiniteness Defense*

Defendants waived and/or are estopped from asserting indefiniteness in light of their Invalidity Contentions and stipulation to claim construction.

First, the Invalidity Contentions stated that fifteen claims are indefinite because a POSITA "would not understand the bounds of the claims in which they appear when read in light of the specification." (Invalidity Contentions, at 353–54.) As adopted by the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 12-00516-JVS (RNBx)                    Date   April 16, 2013

Title   Biocell Technology LLC v. Arthro-7, et al.

Court, the Northern District of California's Patent L.R. 3-3 governs Invalidity
Contentions and provides that a party should include "[a]ny grounds of invalidity based
on indefiniteness under 35 U .S.C. § 112(2) . . . of any of the asserted claims." N.D. Cal.
Patent L.R. 3-3(d). Although this does not explicitly require reference to specific claim
terms, Defendants' failure to be specific as to the "grounds of invalidity based on
indefiniteness" is striking.  They now assert that the "average molecular weight" term in
all the patents-in-suit and the "composition and corresponding test analysis" term in the
'180 Patent—a term which appears in claims including "average molecular weight" and
was not mentioned by Devore—are indefinite. (Indefiniteness Motion, at 1.) Finding the
Invalidity Contentions sufficient would substantially undermine the purpose of the Patent
Rules, namely, to ensure "full, timely discovery and provide all parties with adequate
notice and information with which to litigate their cases, not to create supposed loopholes
through which parties may practice litigation by ambush."[13] IXYS Corp. v. Advanced
Power Tech., Inc., No. C 02-03942 MHP, 2004 WL 1368860, at *3 (N.D. Cal. June 16,
2004); see also McDavid Knee Guard, Inc. v. Nike USA, Inc., 809 F. Supp. 2d 863, 878
(N.D. Ill. 2011) (concluding that Nike waived right to pursue invalidity theory because it
failed to identify the claim term that was grounds for invalidating the claim).

        Second, Defendants initially asserted that "all terms found in the five patents-in-
suit require their plain and ordinary meaning" and that "many terms" do not "expressly
fall outside their ordinary and customary meaning." (Preliminary Claim Construction,
Trusso Suppl. Decl. Ex. I, Docket No. 144-9, at 1–2.) They ultimately stipulated that
"average molecular weight" means "the weighted arithmetic average of the molecular
weight of all the chains in a polymer" and that "corresponding test analysis" means "a
test analysis corresponding to the composition described in the claims." (Order Granting
Claim Construction Stipulation, Docket No. 80, at 3.)

        Although a party is not absolutely precluded from arguing indefiniteness after
claim construction, it cannot prejudice an opposing party by unexpectedly reasserting an
indefiniteness argument that was not previously or consistently raised and after

---

        [13]Under Defendants' theory, one could plead a counterclaim or defense of invalidity stating that a
patent is invalid based on indefiniteness, which may survive a Rule 12(b)(6) motion to dismiss, and then
satisfy Patent Local Rule 3-3(d) simply by copying and pasting that same statement, without more, into
the invalidity contentions. The Court does not believe that the Patent Local Rules condone this
approach.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 12-00516-JVS (RNBx) | Date | April 16, 2013 |

| | |
|---|---|
| Title | Biocell Technology LLC v. Arthro-7, et al. |

stipulating to claim construction. See Transclean Corp. v. Jiffy Lube Int'l, Inc., 474 F.3d 1298, 1307 (Fed. Cir. 2007) (holding that judicial estoppel applies to claim construction if, *inter alia*, party's new position was "clearly inconsistent" with its prior position and it would derive an "unfair advantage" if not estopped); Accentra, Inc. v. Staples, Inc., 851 F. Supp. 2d 1205, 1212 (C.D. Cal. 2011) (finding plaintiff not prejudiced by post-trial motion for indefiniteness because, *inter alia*, "finding claims indefinite is not a matter of adopting a different construction . . . to which patentee needs to adjust, but a matter of concluding that no construction of the disputed claims is possible"; and defendant "repeatedly raised the indefiniteness of the" patent, so no "unfair surprise" could be claimed from present motion), aff'd in part and rev'd in part on other grounds, 2013 WL 49556 (Fed. Cir. 2013); Harrah's Entm't, Inc. v. Station Casinos, Inc., 321 F. Supp. 2d 1173, 1176 (D. Nev. 2004) (noting that Federal Circuit has stated that "[a]mbiguity, undue breadth, vagueness, and triviality are matters which go to claim validity for failure to comply with 35 U.S.C. § 112 ¶ 2, not to interpretation or construction," Intervet Am., Inc. v. Kee-Vet Labs., 877 F.2d 1050, 1053 (Fed. Cir. 1989), and concluding that "the fact that Defendants submitted a proposed [claim] construction does not amount to an admission that the proposed construction was in fact definite").

In Apple, Inc. v. Samsung Elecs. Co., No. 11-CV-01846-LHK, 2013 WL 412858, at *1 (N.D. Cal. Jan. 29, 2013), the court reasoned that Samsung had not waived its indefiniteness argument despite failing to seek claim construction of the term "substantially centered" or include the indefiniteness issue in its pretrial statement, because (1) under the Patent Local Rules, the parties were limited to ten terms for which they could seek construction; (2) Samsung continued to raise the issue, first in its invalidity contentions and later in arguing for a jury instruction; (3) during trial, Apple agreed that Samsung could move for judgment as a matter of law on the issue; and (4) the court allowed Samsung to address indefiniteness in a non-jury brief. Samsung's design patent indefiniteness defense also was not waived because Samsung raised the issue from its answer, through summary judgment briefing, and at trial. Id. at *6. Thus, Apple was on notice of the defense throughout the litigation. Id.

Defendants' present argument is a clear example of "unfair surprise." Although the Preliminary Claim Construction is not an admission, see Harrah's, 321 F. Supp. 2d at 1176, unlike in Apple or Accentra, Defendants stipulated to the meaning of the terms, and Defendants never implied that their position remained contingent on definiteness. Also unlike in Apple or Accentra, Defendants failed to raise the issue of indefiniteness after

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 12-00516-JVS (RNBx) | Date | April 16, 2013 |

| | |
|---|---|
| Title | Biocell Technology LLC v. Arthro-7, et al. |

serving their Invalidity Contentions until the Devore Expert Report, which did not even mention the "corresponding test analysis" term. Therefore, Plaintiffs have not been on notice of Defendants' continued assertion of indefiniteness, much less the specific grounds for it. Further, the Federal Circuit "accord[s] respect to the statutory presumption of patent invalidity" "[b]y finding claims indefinite only if reasonable efforts at claim construction prove futile." Exxon Research & Eng'g Co. v. United States, 265 F.3d 1371, 1375 (Fed. Cir. 2001) (citation omitted). That the parties stipulated to the meaning of "average molecular weight" and "corresponding test analysis" "cuts against any conclusion that the term[s are] not amenable to construction." Therasense, Inc. v. Becton, Dickinson & Co., 560 F. Supp. 2d 835, 877 (N.D. Cal. 2008). It also limits the effect of the Federal Circuit's recognition that a court "may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claims terms as its understanding of the technology evolves." Pressure Prods. Medical Supplies, Inc. v. Greatbatch Ltd., 599 F.3d 1308, 1316 (Fed. Cir. 2010) (citing Pfizer, Inc. v. Teva Pharm., USA, Inc., 429 F.3d 1364, 1377 (Fed. Cir. 2005). Therefore, the Court finds that Defendants unfairly surprised Plaintiffs with the indefiniteness argument and that it is not properly before the Court.[14]

    Accordingly, on procedural grounds, the Court **DENIES** Defendants' Indefiniteness Motion and **GRANTS** Plaintiffs' Invalidity Motion as to indefiniteness under 35 U.S.C. § 112 ¶ 2. The Court also concludes that Defendants' motion should be denied on the merits.

        2.    Merits of the Indefiniteness Argument

_____

    [14]It is true that Plaintiffs did not seek any clarification of the Invalidity Contentions, and both parties have a responsibility to make sure that they fully understand the nature of the opposing side's allegations. See Orion IP, LLC v. Staples, Inc., 407 F. Supp. 2d 815, 818 (E.D. Tex. 2006) ("A defendant cannot lay behind the log until late in the case and then claim it lacks notice as to the scope of the case or the infringement contentions."). But in Orion, unlike in this case, the court reasoned that the defendant knew or should have known that the plaintiff intended to accuse more than just one feature of the defendant's website of patent infringement, because the invalidity contentions expressly noted that the defendant's entire website was accused; the plaintiff repeatedly requested discovery related to the entire website; and the defendant's own argument demonstrated that it realized the plaintiff's accusations extended beyond only one website feature. Id. at 817–18. Thus, Orion does not require the court to excuse the inadequacy of Defendants' Invalidity Contentions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 12-00516-JVS (RNBx)                 Date   April 16, 2013

Title   Biocell Technology LLC v. Arthro-7, et al.

a.   *Legal Standard*

"Because claims delineate the patentee's right to exclude . . ., the scope of the claims must be sufficiently definite to inform the public of the bounds of the protected invention, *i.e.*, what subject matter is covered by the exclusive rights of the patent." Halliburton Energy Servs., Inc. v. M-I, LLC, 514 F.3d 1244, 1249 (Fed. Cir. 2008). "Otherwise, competitors cannot avoid infringement, defeating the public notice function of patent claims." Id. Whether a claim complies with the definiteness requirement of 35 U.S.C. § 112 ¶ 2 is a matter of claim construction, and a determination that a patent claim is indefinite is a legal conclusion. Noah Sys., Inc. v. Intuit, Inc., 675 F.3d 1302, 1311 (Fed. Cir. 2012) (citations omitted).

b.   *Average Molecular Weight*

Thanedar's opposing expert testimony regarding "average molecular weight" rebuts Devore, creating questions of credibility and weight that make summary judgment on the merits inappropriate. See SunTiger, Inc. v. Scientific Research Funding Grp., 189 F.3d 1327, 1336–37 (Fed. Cir. 1999) (reasoning that summary judgment could not be sustained where party's evidence rebutted conclusions of expert witness, creating material facts dispute). Defendants argue that the Court should not rely on the Thanedar Decl. to create a fact issue about the indefiniteness of "average molecular weight." (Indefiniteness Reply, at 5–9.) The Court disagrees and notes that this is, to an extent, a matter of claim construction.[15]

---

[15]Claim construction "begins and ends" with the claim language itself, Interactive Gift Express, Inc. v. Compuserve, Inc., 256 F.3d 1323, 1331 (Fed. Cir. 2001), but extrinsic evidence may be consulted "if needed to assist in determining the meaning or scope of technical terms in the claims." Pall Corp. v. Micron Separations, Inc., 66 F.3d 1211, 1216 (Fed. Cir. 1995). In construing the claim language, the Court begins with the principle that "the words of a claim are generally given their ordinary and customary meaning." Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). This"is the meaning that the [claim] term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." Id. at 1313. "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Id. In some cases, "determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art." Id. In those cases, "the court looks to those sources available to the public that show what a person of skill in the art would have understood the disputed claim language to mean." Id. These sources include the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 12-00516-JVS (RNBx)                    Date    April 16, 2013

Title    Biocell Technology LLC v. Arthro-7, et al.

_____

First, "average molecular weight" is not vaguely defined but bound by a range of
daltons in each claim, and neither the claims nor the specifications imply that the patentee
acted as its own lexicographer in defining "average molecular weight." Second,
Defendants conceded that "average molecular weight" has a plain and ordinary meaning
and assert in their Reply that the specification has no guidance on how to determine
molecular weight. Thus, Thanedar's testimony would not "be used to vary or contradict
the claim language" or specification rather than to "come to the proper understanding of
the claims." Vitrionics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1583, 1585 (Fed. Cir.
1996) (noting that "[h]ad the district court relied on the expert testimony . . . solely to
help it understand the underlying technology, we could not say the district court was in
error," and that testimony on the proper construction of a disputed term "may only be
relied upon if the patent documents, taken as a whole, are insufficient to enable the court
to construe disputed claim terms"). Third, Thanedar claims a POSITA would understand
that the standard method to determine the "average molecular weight" is GPC and that
any other methods would lead to statistically insignificant differences in weight. If there
would be no statistically significant variation in molecular weight between measurement
methods, then knowing the patentee's preferred method is not necessary or critical to
practicing the invention. See Honeywell Int'l, Inc. v. Int'l Trade Comm'n, 341 F.3d 1332
(Fed. Cir. 2003) (affirming invalidity for indefiniteness based upon claim term "melting
point" because several methods could be used to measure melting point, and choice of
method would be critical to discerning whether particular product is made by a process
that infringed patent). Therefore, a reasonable fact-finder could credit Thanedar's
testimony, and "average molecular weight" may not be indefinite.

Accordingly, the Court **DENIES** Defendants' Indefiniteness Motion as to "average
molecular weight" on the merits.

c.    *A Composition and a Corresponding Test Analysis*

Defendants argue that Claims 1–23 of the '180 Patent are indefinite because they
contain "both an apparatus [a composition] and the method steps of using the apparatus
[performing a test analysis]." (Indefiniteness Motion, at 9.) Defendants believe the claim

_____

words of the claims, the specification, the prosecution history, "and extrinsic evidence concerning
relevant scientific principles, the meaning of technical terms, and the state of the art." Id. (internal
quotation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 12-00516-JVS (RNBx) | Date | April 16, 2013 |

| | |
|---|---|
| Title | Biocell Technology LLC v. Arthro-7, et al. |

could be infringed when one makes, uses, or sells the composition that contains the claim elements; performs a test analysis of the composition; or both. (<u>Id.</u> at 10.) The Court disagrees as a matter of law.

A method claim recites a series of steps or actions, while an apparatus claim recites a tangible item. <u>See</u> <u>In re</u> <u>Kollar</u>, 286 F.3d 1326, 1332 (Fed. Cir. 2002). "[R]eciting both an apparatus and a method of using that apparatus renders a claim indefinite.. <u>IPXL Holdings, LLC</u> <u>v.</u> <u>Amazon.com, Inc.</u>, 430 F.3d 1377, 1384 (Fed. Cir. 2005) (citation omitted). In such situations, "a manufacturer or seller of the claimed apparatus would not know from the claim whether it might also be liable for contributory infringement because a buyer or user of the apparatus later performs the claim method of using the apparatus." <u>Id.</u> (citation omitted). <u>IPXL</u>, however, does not establish that any claim that contains method and apparatus descriptions necessarily is invalid for indefiniteness; rather, such language is problematic if it does not adequately inform the public of when infringement occurs. <u>Datamize, LLC</u> <u>v.</u> <u>Plumtree</u> <u>Software, Inc.</u>, No. C 04-2777 VRW, 2007 WL 5720627, at *12 (N.D. Cal. Aug. 7, 2007).

In <u>IPXL</u>, it was unclear whether infringement could occur when one created a system that allows the user to change the predicated transaction information or accepted the displayed transaction, or whether when the user actually used the input means to change transaction information or to accept a displayed transaction. 430 F.3d at 1384. In <u>Rembrandt</u> <u>Data</u> <u>Techs., LP</u> <u>v.</u> <u>AOL, LLC</u>, 641 F.3d 1331 (Fed Cir. 2011), several claims were invalid because their first four elements recited apparatus elements—buffer means, fractional encoding means, and trellis encoding means—while the final element recited a method—"transmitting the trellis encoded frames." <u>Id.</u> at 1339. In <u>Datamize</u>, 2007 WL 5720627, at *11, a claim recited, "[a] computer program storage medium readable by a computing system and encoding a computer program for executing a computer process. . . ." The language describing a tangible item that stores a program indicated an apparatus claim, but the language also stated a method claim because it described the design and function of the program stored on the tangible item. <u>Id.</u> at *12.

Contrary to Defendants' reading, as a matter of law, the '180 Patent does not impermissibly claim an apparatus and a method for using the apparatus in one claim. Claim 1 recites, "[a] composition and a corresponding test analysis, wherein the composition is derived from an animal product having (a) hydrolyzed collagen type II having an average molecular weight of between about 50 and about 10,000 daltons and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-00516-JVS (RNBx) | Date | April 16, 2013 |
| --- | --- | --- | --- |

| Title | Biocell Technology LLC v. Arthro-7, et al. |
| --- | --- |

(b) a measurable amount of hyaluronic acid; and the test analysis shows that the hyaluronic acid comprises at least 10% of the composition." ('180 Patent, Docket No. 117-4, at 10:55–62.) "Corresponding test analysis" means "a test analysis corresponding to the composition described in the claims." (Claim Construction Order, at 3.) Thus, direct infringement is limited to a composition comprised of at least 10% hyaluronic acid. Claim 23 recites, "[a] method for inducing cartilage formation in an individual with a connective tissue disorder, comprising orally administering to the individual an effective daily cartilage-inducing amount of the composition of claim 1." ('180 Patent at 12:27–30.)

Defendants argue that infringement could occur even where one only performs a test analysis, but the consistent use of the phrase "a composition *and* a corresponding test analysis" means that infringement requires both a composition and a test analysis, not just one or the other. In addition, unlike in Datamize, where "[t]he claim language describe[d] a tangible item that is defined by certain steps, essential to the claimed invention," 2007 WL 5720627, at *12, nothing in '180 Patent requires the infringer to perform the "test analysis." It is reasonable to read the claim terms as requiring the infringer to possess the "corresponding test analysis"—making it a "thing" and not a "method." The specification is not to the contrary; in detailing a figure showing production of hydrolyzed collagen type II, it explains that "at least 10% of hyaluronic acid is" found in the collagen based on a test analysis, but it does not indicate that the infringer must perform the "corresponding test analysis." (180 Patent at 6:58–62.) The Court finds that the claims focus on the structure of the composition, not a method of using it, and a potential infringer can determine that "possession of a system with the capabilities for the claimed use" would constitute infringement. Collaboration Props., Inc. v. Tandberg ASA, No. C 05-01940 MHP, 2006 WL 1752140, at *7 (N.D. Cal. June 23, 2006) (reasoning that IPXL stood for narrow rule that a single claim "may not purport to cover a system, independent of any use of the system, and simultaneously purport to cover a particular use of the system."). Therefore, "a composition and corresponding test analysis" is not indefinite.

Accordingly, on the merits, the Court **DENIES** Defendants' Indefiniteness Motion and **GRANTS** Plaintiffs' Invalidity Motion as to the indefiniteness of "a composition and corresponding test analysis" under 35 U.S.C. § 112 ¶ 2

IV.   CONCLUSION

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 12-00516-JVS (RNBx)                    Date   April 16, 2013

Title   Biocell Technology LLC v. Arthro-7, et al.

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Invalidity Motion and **DENIES** Defendants' Indefiniteness Motion. Accordingly, the Court upholds the validity of the patents-in-suit.

| Substantive Issue and Motion | Disposition |
|---|---|
| **Anticipation of the '327 Patent** (Plaintiffs' Motion, Docket No. 112) | **GRANTED** |
| **Anticipation of the '841 and '180 Patents** (Plaintiffs' Motion) | **GRANTED** |
| **Obviousness of the Patents-in-Suit** (Plaintiffs' Motion) | **GRANTED** |
| **Indefiniteness** (Plaintiffs' Motion; Opposition to Defendants' Motion, Docket No. 142) | **GRANTED** in its entirety on procedural grounds, and on the merits as to "a composition and corresponding test analysis" |
| **Indefiniteness of "Average Molecular Weight"** (Defendants' Motion, Docket No. 111) | **DENIED** |
| **Indefiniteness of "A Composition and Corresponding Test Analysis"** (Defendants' Motion) | **DENIED** |

IT IS SO ORDERED.

                                                                    0       :       00

                                          Initials of Preparer        dr